UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PATRYCE HACKSHAW,                           Case No. 10-13399

              Plaintiff,                David M. Lawson
vs.                                         United States District Judge

METRO WIRE AND CABLE CO. and                Michael Hluchaniuk
DONALD EZOP,                                United States Magistrate Judge

              Defendants.
_____/

## REPORT AND RECOMMENDATION
## MOTION FOR SUMMARY JUDGMENT (Dkt. 18)

## I.      PROCEDURAL HISTORY

Plaintiff filed this employment discrimination and retaliation action,

originally *pro se*, on August 25, 2010.  (Dkt. 1).  District Judge David M. Lawson

referred this matter to the undersigned for all pretrial proceedings.  (Dkt. 16).

Defendants filed a motion for summary judgment on February 10, 2011.  (Dkt. 18).

Plaintiff moved to extend discovery because she had recently obtained counsel and

indicated that further discovery was necessary to respond to the motion for

summary judgment.  (Dkt. 19, 26).  Plaintiff's motion was granted and the Court

also ordered plaintiff to file a response to the motion for summary judgment by

July 5, 2011.  (Dkt. 29).[1]  Pursuant to notice, a hearing was held on July 21, 2011. (Dkt. 29).

This matter is now ready for report and recommendation.  For the reasons set forth below, the undersigned **RECOMMENDS** that defendants' motion for summary judgment be **GRANTED**.

## II.    FACTUAL BACKGROUND

### A.    Defendants' Motion for Summary Judgment

Defendants first argue that defendant Ezop is not a proper defendant under Title VII, as individuals are not employers.  In addition, Defendants also argue that they are entitled to summary judgment because plaintiff has offered no evidence of discrimination.  Defendants further assert that, even under the Elliott-Larsen Civil Rights Act, where some individuals can have liability, all claims should be dismissed because plaintiff has produced no direct or circumstantial evidence of discrimination.  As to plaintiff's retaliation claims, defendants argue that plaintiff cannot prove a causal connection between the protected activity and her dismissal and that defendants had several legitimate business reasons for terminating plaintiff.

---

[1]  Plaintiff's motion to compel discovery (Dkt. 28) was also heard on this date and will be the subject of a separate order.  Plaintiff did not claim that the discovery sought in that motion impeded her ability to respond to the motion for summary judgment.

B.    <u>Plaintiff's Response</u>

With regard to her discrimination claim, plaintiff identifies two comparable white employees – Kelly Freed and Kathy Simmons – as individuals who spent a lot of time chatting and were not written up as plaintiff was.  In addition, Susan Wesley was identified as a person who made a lot of personal telephone calls, but was never written up.  Plaintiff also identifies Rosemarie Stinebiser as a comparable who made a lot of mistakes but was never reprimanded or written up. Plaintiff also contends that she received "racially derogatory literature" on one occasion and that a racist remark was made at a company holiday function in her presence and nothing was done or said about it.

Plaintiff claims that she has offered sufficient evidence to create a genuine issue of material fact regarding causation as it relates to her retaliation claim.  She filed her EEOC complaint on April 20, 2009.  The complaints were still being addressed when she was terminated in October, 2009, given that defendants' response was sent shortly after plaintiff was terminated.  Cheryl Ezop, one of the owners of Metro Wire testified that she was upset that plaintiff had filed an EEOC complaint without giving the company a chance to address her complaints internally.  Plaintiff also points to evidence that defendant Ezop was angry about the complaint, but testified falsely that he was not angry.  According to plaintiff, this calls his credibility into question and creates a genuine issue of material fact

regarding the causal connection between plaintiff's protected activity and her termination. Plaintiff also says that her job duties were modified after she filed the complaint and the environment of the office felt "cold" and made plaintiff "feel that she had done something wrong" after filing the complaint. This is, according to plaintiff, sufficient to create a genuine issue of material fact regarding causation.

Plaintiff also argues that she has offered sufficient evidence to create a genuine issue of material fact regarding pretext. Plaintiff points to defendants' changing rationale for her termination, which include a variety of purportedly "legitimate business reasons" including economic reasons, performance issues, and that her responsibilities could be easily distributed to other more qualified individuals. According to plaintiff, defendants abandoned the performance issue at some point, given that there were no performance issues (i.e., she was not written up) during the six months between the filing of the EEOC complaint and her termination. Plaintiff argues that defendants' credibility is undermined because Ezop testified that plaintiff was not terminated, but was merely "laid off," which is inconsistent with their position that she was terminated for performance reasons.

Plaintiff also contends that the Court should reject defendants' claim that several white employees were also terminated for economic reasons as wholly pretextual. Of the four employees identified, David Yolonek was plainly terminated for performance reasons and Kelly Freed's termination paperwork

mentions nothing about an "economic" basis for her termination.  Dan Brown was also disciplined just before being terminated.  Thus, that leaves one employee, Donna Jacquin, who was terminated after only six months with the company and replaced one year later.

As to Mr. Ezop's liability, plaintiff argues that he should not be dismissed as to the Elliott-Larsen claim because he was a supervisor and was engaged in discriminatory behavior while acting in his capacity as plaintiff's employer. *Elozonvic v. Bennett*, 274 Mich.App. 1; 731 N.W.2d 452 (2007).   Plaintiff points to his "anger" about her discrimination complaints as evidence of his discriminatory intent along with his false testimony that white employees were terminated for economic reasons.

C.    <u>Defendants' Reply</u>

In reply, defendants assert that plaintiff has essentially admitted that Ezop committed no discriminatory or retaliatory acts.  According to defendants, plaintiff admits that she knew that Ezop did not send any racist emails to her and the email identified in her paragraph 17 of her complaint was not sent while she was employed at Metro Wire.  And, plaintiff testified that there were no discriminatory or retaliatory acts by Ezop.

Defendants assert that the alleged discriminatory acts identified by plaintiff in her response – (1) the racist comment made at a holiday office function; (2) the

racist email; (3) other employees making personal phone calls and making mistakes while being judged less harshly; and (4) plaintiff being called a bitch by a white co-worker – are not sufficient to create any genuine issue of material fact. As to the first issue, plaintiff admits that she did not notify the alleged speaker or her supervisor or anyone else at Metro Wire regarding the incident.  As to the second issue, plaintiff recanted her allegation that an email was sent by Ezop.  As to whether plaintiff was disciplined more harshly, defendants point out that Ms. Freed was disciplined twice for excessive talking and was separated from employment before plaintiff.  Ms. Freed, Ms. Wesley and Ms. Hayward had different supervisors than plaintiff.  Ms. Wesley and Ms. Hayward are managers and had been with Metro Wire for over 15 years.  Ms. Stinebiser's mistakes – filing items in the wrong folders – are not comparable to the mistakes made by plaintiff.  Thus, for all these reasons, defendants assert that plaintiff has completely failed to identify any appropriately similarly situated employees who qualify as comparables.  As to the fourth issue, defendants argue that plaintiff has failed to identify what is "racial" about being called a "bitch" and there is evidence showing that the employee at issue also used the same epithet to refer to white co-workers.

Defendants argue that plaintiff has failed to "get around" the temporal proximity issue by alleging "increased harassment" at Metro Wire because she has no evidence, other than her "feelings" that any actions taking during that period

were retaliatory.  That is, plaintiff offers to evidence to substantiate her "feelings" that she was being isolated or the environment was "cold" because of retaliation for filing the EEOC complaint.  Thus, defendants assert that plaintiff failed to meet her burden of establishing a *prima facie* case of retaliation, which includes proof of causation.

Assuming she established a causal connection, defendants also assert that she failed to show that the stated reason was pretextual.  According to defendants, they have always maintained that plaintiff was terminated for economic reasons and but for the poor economy and the decrease in Metro Wire's sales, she would not have been terminated.  In making the decision as to which employees were terminated for economic reasons, defendants say they also conducted a secondary analysis to choose the employees; plaintiff was chosen because of her divisible job functions and poor performance history.  Defendants also assert that plaintiff's theory that Metro Wire had recent history of using economic necessity as a pretext to terminate poor performers does not help her case because those other employees in this category were white.  Thus, nothing about this theory advances plaintiff's burden of showing that the "pre-text" of economic necessary was motivated by racial animus.

## III.   ANALYSIS AND CONCLUSIONS

### A.   <u>Standard of Review</u>

Report and Recommendation
Motion for Summary Judgment
*Hackshaw v. Metro Wire and Cable*; Case No. 10-13399

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c); *Kocak v. Community Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005); *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005).  The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005), quoting, *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 251-52 (1986); *see also Tucker v. Union of Needletrades Indus. & Textile Employees*, 407 F.3d 784, 787 (6th Cir. 2005).  The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion.  *See Matsushita Elec. Indus. Co.*, *Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

Under Federal Rule of Civil Procedure 56, a party asserting a fact that cannot be or is not genuinely disputed must support that assertion by citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declaration, stipulations, admission, interrogatory answers, or other materials; or a showing that the materials cited do

not establish the absence or presence of a genuine dispute or that an adverse party

cannot produce admissible evidence to support the fact.  Fed.R.Civ.P. 56(c)(1).[2]

B.    Discrimination

Plaintiff bears the burden of establishing a *prima facie* case of race

discrimination.  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).  In

order to establish an employment discrimination claim, a plaintiff must either

present direct evidence of discrimination or introduce circumstantial evidence that

would allow an inference of discriminatory treatment.  *Johnson v. Univ. of*

*Cincinnati*, 215 F.3d 561, 572 (6th Cir. 2000).  Plaintiff "can make the required

showing by demonstrating that race [or sex] was a direct factor in the employment

decision."  *Weberg v. Franks*, 229 F.3d 514, 522 (6th Cir. 2000) (citations

omitted).  Direct evidence is "evidence which, if believed, requires the conclusion

---

[2] Formerly, "Rule 56(e) require[d] that sworn or certified copies of all papers referred to in an affidavit must be attached to or served with that affidavit ... To be admissible, documents must be authenticated by and attached to an affidavit that meets the requirements of Rule 56(e) and the affiant must be a person through whom the exhibits could be admitted into evidence."  *Johnson v. Memphis City Schools*, 2010 WL 1957267, *2 (W.D. Tenn. 2010), quoting, 10A Charles A. Wright, Arthur R. Miller and Mary Kay Kane, Federal Practice & Procedure, § 2722, at 379-80 & 382-84 (1988). According to the Advisory Comments to the recent amendments, this specific requirement was omitted because as unnecessary given the requirement in subdivision (c)(1)(A) that a statement or dispute of fact be supported by materials in the record.  Comments, 2010 Amendments to Fed.R.Civ.P. 56, subdivision (c). Notably, the language changes have not changed the standard itself.  *Id.* ("The standard for granting summary judgment remains unchanged.").

that unlawful discrimination was at least a motivating factor in the employer's actions." *Johnson v. Kroger Co.*, 319 F.3d 858, 865 (6th Cir. 2003), quoting, *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 1999).  To defeat a motion for summary judgment in a discrimination case, a plaintiff must adduce direct or circumstantial evidence of discrimination.  *DiCarlo v. Potter*, 358 F.3d 408, 414 (6th Cir. 2004).  When analyzing race discrimination claims under ELCRA, Michigan courts look to federal precedent for guidance. *Radtke v. Everett*, 442 Mich. 368, 382, 501 N.W.2d 155 (1993).  The same evidentiary burdens apply in ELCRA cases as in those under Title VII. *Jamison v. Dow Chem. Co.*, 354 F.Supp.2d 715, 733 (E.D. Mich. 2004), citing *Sumner v. Goodyear Co.*, 427 Mich. 505, 525, 398 N.W.2d 368 (1986).

To defeat a motion for summary judgment in a discrimination case, a plaintiff must adduce direct or circumstantial evidence of discrimination.  *DiCarlo v. Potter*, 358 F.3d 408, 414 (6th Cir. 2004).  Plaintiff has not offered any direct evidence of discrimination.  That is, plaintiff has not offered any evidence that, if believed, would dictate a finding, with no need to draw inferences, that "unlawful discrimination was at least a motivating factor in the employer's actions." *Amini v. Oberlin Coll.*, 440 F.3d 350, 359 (6th Cir. 2006).  At best, plaintiff testified that she received one racial email and that a racially derogatory remark was made by a coworker at an office holiday gathering.  Plaintiff does not show, however, how

this alleged racial animus is related to the adverse employment consequence she suffered.

Moreover, as to the racially derogatory comment plaintiff says was made at an office holiday gathering, plaintiff offers no evidence that she reported this comment to her superiors.  It is true that when an employer is on notice of a racially hostile work environment or one tainted by discriminatory animus, the employer may not turn a blind eye to the same.  *Pitts v. Kone, Inc.*, 2006 WL 2946814, *6 (E.D. Mich. 2006).  Under both federal law and Michigan's ELCRA, an employer in such circumstances is obligated to promptly take an investigation of the same and provide remedial measures.  *Grow v. W.A. Thomas Co.*, 236 Mich.App. 696, 699-702 (1999); *Risinger v. Ohio Bur. of Workers' Comp*, 883 F.2d 475, 482-3 (6th Cir. 1989) (employer has duty to undertake prompt investigation and provide remedy after being on notice of racial harassment or discrimination).  Here, plaintiff offers no evidence that she reported the incident at the holiday gathering to any of her superiors or that they otherwise knew about it. She vaguely asserts that her superiors would have heard it when she did, but she offers no evidence to support this notion, and does not cite any authority to support her position that the circumstances she described constitute sufficient notice to an employer.

To present a prima *facie case* of race discrimination using indirect evidence

under the *McDonnell Douglas* framework, plaintiff must show that (1) she is a member of a protected class, (2) she was subject to an adverse employment action, (3) she was qualified for her position and (4) she was replaced by a person outside the protected class or that a comparable person outside the class was treated differently.  *See Vaughn v. Watkins Motor Lines*, *Inc.*, 291 F.3d 900, 906 (6th Cir. 2002); *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992).  The establishment of a *prima facie* case creates a rebuttable presumption of discrimination and requires the defendant to "articulate some legitimate, nondiscriminatory reason" for taking the challenged action. *Johnson*, 215 F.3d at 572.  If the defendant is able to satisfy this burden, the plaintiff must then "prove that the proffered reason was actually a pretext to hide unlawful discrimination." *Id.* at 573.  The plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.  *McDonnell Douglas Corp.*, 411 U.S. at 804.

Defendants contend that plaintiff fails to establish a *prima facie* case of race discrimination because she cannot show that she was treated differently than other non-minority employees who were in "all respects" similarly situated.  *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992).  In *Mitchell*, the Sixth Circuit explained the "similarly situated" element of the *prima facie* case as follows:

> It is fundamental that to make a comparison of a discrimination plaintiff's treatment to that of non-minority employees, the plaintiff must show that the 'comparables' are similarly situated in all respects. *Thus, to be deemed similarly situated, the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have been engaged in the same conduct ....*

964 F.2d at 582-83 (emphasis added).  The Sixth Circuit's subsequent decision in *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998), held that the plaintiff is "required to prove that all of the relevant aspects of his employment situation were 'nearly identical' to those of [the non-minorities'] employment situation[s]." *Ercegovich*, 154 F.3d at 352, quoting, *Pierce v. Commonwealth Life. Ins. Co.*, 40 F.3d 796, 802 (6th Cir. 1994).

In this case, the undersigned concludes that plaintiff's evidence misses the mark and she has not offered competent evidence that she was treated differently from white employees who were similarly situated.  This is so because the "comparables" identified by plaintiff are not similarly situated in all relevant respects.  Defendants first argue that plaintiff was Metro Wire's only "Customer Services Financial Administrator" and given that she was only employee with her specific job responsibilities, there are no "truly similarly situated" employees to which she can be compared.  However, the undersigned views defendants' position as an unduly narrow view of *Mitchell*, which has since been clarified by the Sixth

Circuit, as set forth above.

Defendants next argue that even if all non-managerial employees are considered as potential "comparables," plaintiff cannot show that any white employees were treated differently or less harshly for similar acts as those committed by plaintiff. Defendants offer evidence that 15 Metro Wire employees were in various stages of discipline for acts and errors similar to those committed by plaintiff. (Dkt. 18, Ex. N). In contrast, plaintiff offers no evidence that the employees she identifies as "comparables" engaged in the same conduct without differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it. *Mitchell*, 963 F.2d at 583. Indeed, none of the comparables identified by plaintiff made the same type of errors that she made, which led to the more severe discipline. *See e.g.*, *Gibson v. Shelly Co.*, 314 Fed.Appx. 760, 771 (6th Cir. 2008) ("...Gibson has not identified a single employee with two serious safety violations who was not fired.").

Plaintiff's argument that Ms. Stinebiser's mistakes were not the subject of discipline is unavailing. On April 30, 2009, plaintiff received a written warning for two errors, one involving the misapplication of tax payments, and the other involving an electronic funds transfer error. (Dkt. 18-7, Pg ID 239). It was indicated that if additional discipline were required, the result would be two days of unpaid leave. *Id.* Plaintiff indicated her disagreement with the action taken. *Id.*

Report and Recommendation
Motion for Summary Judgment
*Hackshaw v. Metro Wire and Cable*; Case No. 10-13399

Plaintiff offers no evidence that the placement of documents in the incorrect files (Ms. Stinebiser's mistake) is comparable to the errors for which plaintiff was disciplined and such does not appear to be the case.  To be a successful "comparable," the error at issue should be similar, such as in *Gibson*, where the plaintiff was terminated for "two serious safety violations" and could not show that any other employee who had committed "two serious safety violations" was treated differently.  Plaintiff fails to make the case that other employees were not similarly disciplined for similar errors.  Simply, plaintiff identifies no other employee who made similar errors and who was treated differently than plaintiff.  Thus, plaintiff has failed to establish a *prima facie* case of discrimination.

As to whether plaintiff was disciplined more harshly for excessive chatting, defendants point out that Ms. Freed (a white employee), just like plaintiff, was disciplined twice for excessive talking and was separated from employment before plaintiff.  Plaintiff was cited for excessive talking with Ms. Freed on two occasions: 10/13/08 and 4/23/09.[3]  (Dkt. 18-4, Pg ID 233; 18-6, Pg ID 237).  The first involved a verbal warning and the second involved a written warning noting that a day of unpaid leave would be imposed if further disciplinary action were required.  Similarly, Ms. Freed was given a verbal warning for excessive chatting

---

[3] The document is dated 4/23/08, but this appears to be an error and this actually was issued in 2009, not 2008.

May 15, 2008 (Dkt. 35, Pg ID 833) and in April 2009, she was given a written warning and informed that if further discipline was required, she would be placed on unpaid leave for one day.  (Dkt. 35, Pg ID 834).  Thus, as it relates to the discipline for excessive chatting, Ms. Freed and plaintiff were essentially treated alike.  Plaintiff attempts to argue that she was disciplined more harshly than Ms. Freed, but there is no support in the record for her position.

Plaintiff has simply not come forward with any evidence of proper comparables showing that white employees were treated differently under sufficiently similar circumstances.  Thus, plaintiff has not established a *prima face* case of discrimination and defendants' motion for summary judgment should be granted.  In light of the conclusions reached, the remainder of defendants' arguments on this claim need not be addressed.

C.   Retaliation

"The plaintiff must make out a prima facie case of retaliation by establishing four elements:  (1) the plaintiff engaged in an activity protected by Title VII; (2) the defendant knew that the plaintiff exercised his or her rights; (3) the defendant took an employment action against the plaintiff that a reasonable employee would have found materially adverse; and (4) there was a causal connection between the protected activity and the adverse employment action." *Watson v. City of Cleveland*, 202 Fed.Appx. 844, 855 (6th Cir. 2006).  A claim of

Report and Recommendation
Motion for Summary Judgment
*Hackshaw v. Metro Wire and Cable*; Case No. 10-13399

retaliation under ELCRA requires a higher standard; the plaintiff must show (1) that she opposed violations of ELCRA or participated in an activity protected by the Act and (2) her opposition or participation was a "significant factor" in the adverse employment action. *Moore v. KUKA Welding Sys. & Robot Corp.*, 171 F.3d 1073, 1080 (6th Cir. 1999). In the absence of direct evidence, proof of a Title VII retaliation claim is controlled by *McDonnell Douglas*, just as with a discrimination claim. In this case, plaintiff has not offered any direct evidence of retaliation. Thus, plaintiff's retaliation claim must be analyzed under the *McDonnell-Douglas* burden-shifting framework, which provides that if the plaintiff establishes a *prima facie* case, then the burden shifts to the defendant to "articulate some legitimate nondiscriminatory reason" for its action. *McDonnell Douglas*, 411 U.S. at 802. The plaintiff has the ultimate burden of persuasion even though a *prima facie* case, once established, shifts the burden of producing evidence to the defense. *Wrenn v. Gould*, 808 F.2d 493, 500 (6th Cir. 1987).

"To establish the causal connection required in the fourth prong, a plaintiff must produce sufficient evidence from which an inference could be drawn that the adverse action would not have been taken had the plaintiff not filed a discrimination action." *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000). The Sixth Circuit has explained that it has "never suggested that a lack of temporal proximity dooms a retaliation claim. In fact, we have previously found

retaliation when the termination followed the complaint by over a year. *Gibson v. Shelly*, at 772-773, citing, *Harrison v. Metro. Gov't of Nashville*, 80 F.3d 1107, 1119 (6th Cir. 1996), overruled on other grounds, *Jackson v. Quanex Corp.*, 191 F.3d 647, 667 (6th Cir. 1999). "However, in order to overcome a lack of temporal proximity, the plaintiff must present sufficient evidence supporting the causal connection." *Gibson*, at 773. "[W]here some time elapses between when the employer learns of a protected activity and the subsequent adverse employment action, the employee must couple temporal proximity with other evidence of retaliatory conduct to establish causality." *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008).

In this case, defendant argues that the six months between the filing of the complaint and plaintiff's termination is just too long and therefore, causation cannot be established. Plaintiff submitted an internal complaint to defendant on April 13, 2009 and filed her EEOC complaint on April 20, 2009. Plaintiff says because the complaints were still being investigated by the EEOC in October, 2009 when she was terminated and defendant's response was not sent into the EEOC until after she was terminated, there is a causal connection. Plaintiff also points to evidence that Cheryl Ezop's son assisted the attorneys with their investigation, that Ms. Ezop was "angry" about the complaint, and that Mr. Ezop was angry, but inconsistently denied that he was angry, as supporting her causation argument.

Plaintiff also says that the work environment changed after she filed her complaint - it was "cold" - and her former job duty of handling the mail was "taken away."

It is clear that this is a case where the length of time between the filing of the complaint and the termination are too far apart for temporal proximity alone to sufficiently establish causation. *Mickey v. Zeidler Tool and Die Co.*, 516 F.3d 516 (6th Cir. 2008). Thus, where some time elapses between when the employer learns of a protected activity and the subsequent adverse employment action, the employee must couple temporal proximity with other evidence of retaliatory conduct to establish causality. *Id.*, citing, *Little v. BP Exploration & Oil Co.*, 265 F.3d 357, 365 (6th Cir. 2001) ("[T]emporal proximity, when considered with the other evidence of retaliatory conduct, is sufficient to create a genuine issue of material fact as to" a causal connection.). Other than possibly the reassignment of her job duty of handling mail, plaintiff points to no actual "retaliatory conduct" that occurred between the filing of her complaints and her termination. The Ezops may or may not have been "angry" about the complaints, but plaintiff points to no actual conduct directed at her in that six month time period that was an apparent result of that "anger" or "cold" atmosphere. The undersigned concludes that plaintiff has failed to establish a *prima facie* cause of retaliation because she has insufficient evidence of causation. In the view of the undersigned, the reassignment of her mail duties, as the single act of "retaliation" in the course of

the six months between when she filed her complaint and when she was terminated, without more, simply does not create a genuine issue of material fact. In the absence of additional evidence of retaliation, the time lapse between the filing of the complaints and her termination is simply too long.

  D. <u>Mr. Ezop</u>

  Plaintiff does not dispute that Mr. Ezop is not an "employer" under Title VII and thus, her Title VII claims fail for this reason.  As to Mr. Ezop's liability under Elliott-Larsen, plaintiff argues that he should not be dismissed because he was a supervisor and was engaged in discriminatory behavior while acting in his capacity as plaintiff's employer.  *Elozonvic v. Bennett*, 274 Mich.App. 1; 731 N.W.2d 452 (2007).  Plaintiff points to his "anger" about her discrimination complaints as evidence of his discriminatory intent along with his false testimony that white employees were terminated for economic reasons.  The undersigned need not reach the issue of whether Mr. Ezop was an "employer" under Elliott-Larsen, given the conclusions reached above that plaintiff has not established a *prima facie* case of discrimination or retaliation, given that the elements and proofs are the same under Title VII and Elliott-Larsen.

## IV. RECOMMENDATION

  For the reasons set forth above, the undersigned **RECOMMENDS** that defendant's motion for summary judgment be **GRANTED**.

Report and Recommendation
Motion for Summary Judgment
*Hackshaw v. Metro Wire and Cable*; Case No. 10-13399

2:10-cv-13399-DML-MJH   Doc # 39   Filed 08/29/11   Pg 21 of 22   Pg ID 889

The parties to this action may object to and seek review of this Report and
Recommendation, but are required to file any objections within 14 days of service,
as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule
72.1(d). Failure to file specific objections constitutes a waiver of any further right
of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and
Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some
issues but fail to raise others with specificity will not preserve all the objections a
party might have to this Report and Recommendation. *Willis v. Sec'y of Health
and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of
Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule
72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2,"
etc. Any objection must recite precisely the provision of this Report and
Recommendation to which it pertains. Not later than 14 days after service of an
objection, the opposing party may file a concise response proportionate to the
objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).
The response must specifically address each issue raised in the objections, in the
same order, and labeled as "Response to Objection No. 1," "Response to Objection
No. 2," etc. If the Court determines that any objections are without merit, it may
rule without awaiting the response.

Report and Recommendation
Motion for Summary Judgment
*Hackshaw v. Metro Wire and Cable*; Case No. 10-13399

s/Michael Hluchaniuk

Date: August 29, 2011              Michael Hluchaniuk
                                   United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that, on August 29, 2011, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send notification of such filing to the following: Lance W. Mason, David M. Hess, and Brandon D. Hess.

s/Tammy Hallwood

Case Manager

(810) 341-7887

tammy_hallwood@mied.uscourts.gov