UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PATRYCE HACKSHAW

        Plaintiff,

v.

METRO WIRE AND CABLE CO. and
DONALD EZOP,

        Defendants.

Case No. 10-13399
Honorable David M. Lawson
Magistrate Judge Michael J. Hluchaniuk

_____/

## OPINION AND ORDER ADOPTING MAGISTRATE JUDGE'S RECOMMENDATION, OVERRULING PLAINTIFF'S OBJECTIONS TO REPORT AND RECOMMENDATION, GRANTING THE DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT, AND DISMISSING COMPLAINT WITH PREJUDICE

The matter is before the Court on the plaintiff's objections to a report filed by Magistrate Judge Michael J. Hluchaniuk recommending that the defendants' motion for summary judgment be granted. The Court entered a general order of reference to conduct all pretrial matters, after which the defendants filed their motion. Judge Hluchaniuk filed a report on August 29, 2011 recommending that the motion be granted because the plaintiff failed to identify evidence sufficient to create a fact question on the elements of her employment discrimination and retaliation claims. The plaintiff filed timely objections, and the matter is before the Court for a *de novo* review.

The plaintiff filed her complaint in this Court alleging that she suffered adverse employment action on account of her race when she was reassigned to different duties. She also alleges that six months after she filed a complaint with the Equal Employment Opportunity Commission (EEOC), she was fired. Her complaint identifies claimed violations of Title VII of the Civil Rights Act of 1964 and the Michigan Elliott-Larson Civil Rights Act.

The defendants Metro Wire and Cable Company (Metro Wire) and its owner, Donald Ezop, filed a motion for summary judgment, arguing that the record evidence does not show that any of its actions were motivated by racial or retaliatory animus. The magistrate judge found no direct evidence of discrimination or retaliation and the plaintiff does not argue otherwise. The magistrate judge also found that the plaintiff did not establish a *prima facie* case of discrimination or the necessary causal connection for retaliation and therefore concluded that summary judgment should be granted. As noted, the plaintiff has objected to that recommendation. After reviewing the motion papers, the magistrate judge's report, and the plaintiff's objections, the Court concludes that no material fact dispute exists as to any of the plaintiff's claims, although for reasons slightly different than those stated by the magistrate judge. Therefore, the Court will adopt the recommendation, grant the motion for summary judgment, and dismiss the complaint with prejudice.

I.

Defendant Metro Wire is an electrical wire and cable distributer. The company is family-owned, with many members of the Ezop family involved in running the business. Defendant Donald Ezop is the president of Metro Wire, and his son, Devon Ezop, was the head of Human Resources. Metro Wire hired plaintiff Patryce Hackshaw, an African-American female, on April 24, 2007 as an office worker. The plaintiff's duties included collections, processing credit applications, posting cash, bank deposits, petty cash, month end close-out of account receivable information, and bonds and liens. The plaintiff was terminated in October 2009.

Metro Wire's employee manual outlines the company's disciplinary policy. There are four steps discussed in the manual: oral reminder, written warning, decision-making leave, and termination. The manual discusses certain actions to be taken by management and employees at

each step.  The manual also describes several infractions for which employees will be suspended without pay, including theft, falsification of records, and breach of the confidentiality agreement. The plaintiff contends that the policies outlined in this manual were employed inconsistently.  In particular, the plaintiff asserts that two other employees, Kelly Freed and Rosemarie Stinebiser, were disciplined less seriously than the plaintiff for similar transgressions.  The plaintiff states that Freed chatted often at work but received only two warnings.  Cheryl Ezop, one of the co-owners, confirmed that Freed often chatted with co-workers, and she had spoken with Freed's supervisor, Eric Sine, about it.  Freed was formally disciplined twice, once on May 15, 2008 and once on April 3, 2009.  Eventually, Freed was terminated from employment on August 24, 2009.  Stinebiser, who, like the plaintiff, was supervised by Linda Hayward, often misfiled paperwork and was not formally disciplined for these mistakes.  The defendants further allege that during the plaintiff's employment, fifteen employees were in various stages of discipline.

According to the plaintiff, in November 2008 at a company Thanksgiving lunch, a coworker picked up a Brazil nut from the table and stated that where she came from they were called "nigger nuts."  Pl.'s Resp. to Def.'s Mot. for Summ. J. Ex. 1 Hackshaw Dep. at 52.  The plaintiff states that "a record scratched and then pretty much everything just proceeded on."  *Ibid.*  Although the rest of the office personnel was sitting at the table and, according to the plaintiff, likely overheard the comment, no disciplinary action apparently was taken.  Between the date of her hiring and January 2009, the plaintiff had no disciplinary problems at the company.  However, according to the defendants, between January 2009 and October 2009, the plaintiff had seven "disciplinary events," some of them resulting in suspensions.  Those infractions included excessive talking, excessive personal phone calls, and mistakes made on the job.  On April 2, 2009, the plaintiff was disciplined

for several work violations, including excessive chatting, use of the telephone for personal calls, failing to perform job functions, mistakes in making deposits, and, according to the defendants, attempting to cover up mistakes made at work. The plaintiff was placed on a one-day unpaid leave as a penalty.

On April 13, 2009, the plaintiff filed a formal complaint with her employers outlining a series of grievances, including that the plaintiff was "the only person constantly reprimanded for talking when several others talk and nothing is said," that she was reprimanded more often for mistakes than her coworkers, and that comments by upper management made her feel "uncomfortable and intimidated." Defs.' Mot. for Summ. J. Ex. G. On the same date, the plaintiff received an e-mail from co-worker Kelly Freed titled "Black Is In" listing several African-Americans who are leaders in their fields and then stating "Michael Jackson must be kicking himself!" Defs.' Mot. for Summ. J. Ex. Q. On April 14, 2009, the defendant company responded to the complaint, notifying the plaintiff that an investigation would begin the week of April 20, 2009. On April 20, 2009, the plaintiff submitted a complaint of race discrimination to the EEOC. The defendants allege that they received a notice from the EEOC of that complaint before they had an opportunity to discuss the plaintiff's internal complaint with her. On April 30, the defendant company told the plaintiff that its internal investigation would be terminated. The defendants contend that the investigation was terminated because the plaintiff refused to cooperate. On the same day, the plaintiff was reprimanded again, this time for incorrectly processing tax credits for the Atlanta office. That function was not generally her responsibility; however, the defendants contend that in order to make that mistake the plaintiff would have had to ignore explicit instructions in the software. The written reprimand notes that such an error would generally result in

termination, but that given the ongoing investigation into her complaint and the fact that the task was not the plaintiff's responsibility, that penalty would be waived.

The plaintiff was terminated from her job on October 20, 2009, ostensibly due to a work force reduction and poor performance. On January 21, 2010, the defendant company submitted its final report to the EEOC, and on May 26, 2010, the EEOC dismissed the defendant's complaint.

The plaintiff filed her complaint *pro se* on August 25, 2010, but subsequently retained counsel who appeared on her behalf. The defendants moved for summary judgment on all counts of the complaint. Magistrate Judge Hluchaniuk recommended that the motion be granted, addressing the race discrimination claim, the retaliation claim, and defendant Ezop's individual liability. The magistrate judge found that the plaintiff had not offered direct evidence of the defendants' improper motives, she had not established a *prima facie* case for either race discrimination or retaliation, and therefore neither defendant was liable to the plaintiff. Judge Hluchaniuk concluded that the plaintiff failed in presenting evidence of a *prima facie* case of discrimination because she did not show that similarly-situated co-workers outside the protected class were treated better than she, since none of the comparable employees identified by the plaintiff made the same type of errors that the plaintiff made. The retaliation *prima facie* case was wanting because the plaintiff did not offer evidence linking her EEOC complaint filing with her termination six months later. Finally, because the claims against the company failed, the magistrate judge said he did not need to consider whether defendant Ezop qualified as an employer under the Elliott-Larson Civil Rights Act. However, the plaintiff did not dispute that defendant Ezop did not qualify as an employer under Title VII.

-5-

The plaintiff makes three objections to the magistrate judge's report and recommendation. First, the plaintiff objects to the magistrate judge's finding that the plaintiff failed to show sufficient evidence of retaliatory conduct to establish a causal connection between the filing of the EEOC complaint and her firing. The plaintiff repeats her argument that the defendant company is "a small, family-owned business" in which there was close contact between management and employees. She says that company owners Cheryl and Donald Ezop were both angry at the plaintiff for filing an EEOC complaint, there was evidence that thereafter the atmosphere turned "cold" toward her, and her job of handling the mail was reassigned. Despite the six-month lapse between the complaint and termination, the plaintiff believes that she has established causation.

Second, the plaintiff objects to the magistrate judge's determination that Kelly Freed — an employee outside the protected class — and the plaintiff were treated similarly for similar conduct. The plaintiff agrees that Freed was formally disciplined twice for excessive chatting, but she argues that Freed actually chatted much more often than the plaintiff, the defendants were aware of Freed's chatting, and therefore the fact that the plaintiff and Freed were written up the same number of times is actually evidence of racially discriminatory treatment.

Third, the plaintiff objects to the magistrate judge's determination that Rosemarie Stinebiser's errors were not similar to the plaintiff's. The plaintiff argues that the errors were at least as serious, so Stinebiser should be considered a fair comparable and the more lenient treatment accorded to her should satisfy the fourth element of the *prima facie* case — disparate treatment — that the magistrate judge found wanting.

II.

Objections to a report and recommendation are reviewed *de novo*. "A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). The parties' failure to file objections to the report and recommendation waives any further right to appeal. *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Likewise, the failure to object to the Magistrate Judge's report releases the Court from its duty to independently review the motion. *Thomas v. Arn*, 474 U.S. 140, 152 (1985).

The Sixth Circuit has stated that "[o]verly general objections do not satisfy the objection requirement." *Spencer v. Bouchard*, 449 F.3d 721, 725 (6th Cir. 2006). "The objections must be clear enough to enable the district court to discern those issues that are dispositive and contentious." *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995) (citation omitted). "'[O]bjections disput[ing] the correctness of the magistrate's recommendation but fail[ing] to specify the findings . . . believed [to be] in error' are too general." *Spencer*, 449 F.3d at 725 (quoting *Miller*, 50 F.3d at 380).

The case is here on summary judgment. The standards for evaluating a motion for summary judgment are well known but bear repeating here. As the Sixth Circuit recently explained:

> Both claimants and parties defending against a claim may move for summary judgment "with or without supporting affidavits." Fed. R. Civ. P. 56(a), (b) [(2009)]. Such a motion presumes the absence of a genuine issue of material fact for trial. The court must view the evidence and draw all reasonable inferences in favor of the non-moving party, and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). The party bringing the summary judgment motion has the initial burden of informing the district court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Mt. Lebanon Personal Care Home, Inc. v. Hoover Universal, Inc.*, 276 F.3d 845, 848 (6th Cir. 2002). Once that occurs, the party opposing the motion

-7-

then may not "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact" but must make an affirmative showing with proper evidence in order to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).

*Alexander v. CareSource*, 576 F.3d 551, 557-58 (6th Cir. 2009). In addition, when "'reviewing a summary judgment motion, credibility judgments and weighing of the evidence are prohibited. Rather, the evidence should be viewed in the light most favorable to the non-moving party. . . . Thus, the facts and any inferences that can be drawn from those facts[] must be viewed in the light most favorable to the non-moving party.'" *Biegas v. Quickway Carriers, Inc.*, 573 F.3d 365, 374 (6th Cir. 2009) (quoting *Bennett v. City of Eastpointe*, 410 F.3d 810, 817 (6th Cir. 2005) (citations omitted)); *see also Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003) ("In evaluating the evidence, [the district court] 'draw[s] all reasonable inferences therefrom in a light most favorable to the non-moving party.'") (quoting *PDV Midwest Ref., LLC v. Armada Oil & Gas Co.*, 305 F.3d 498, 505 (6th Cir. 2002)).

"[T]he party opposing the summary judgment motion must 'do more than simply show that there is some "metaphysical doubt as to the material facts."'" *Highland Capital, Inc. v. Franklin Nat'l Bank*, 350 F.3d 558, 564 (6th Cir. 2003) (quoting *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 800 (6th Cir. 1994), and *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). A party opposing a motion for summary judgment must designate specific facts in affidavits, depositions, or other factual material showing "evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. If the non-moving party, after sufficient opportunity for discovery, is unable to meet his or her burden of proof, summary judgment is clearly proper. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "The mere existence of a scintilla of evidence in support of the [opposing party]'s position will be insufficient; there must

be evidence on which the jury could reasonably find for the [opposing party]."  *Anderson*, 477 U.S. at 252.

In resisting a defensive motion for summary judgment, the party who bears the burden of proof must present a jury question as to each element of the claim.  *Davis v. McCourt*, 226 F.3d 506, 511 (6th Cir. 2000).  Failure to prove an essential element of a claim renders all other facts immaterial for summary judgment purposes.  *Elvis Presley Enters., Inc. v. Elvisly Yours, Inc.*, 936 F.2d 889, 895 (6th Cir. 1991).

The plaintiff's complaint is based on Title VII and its Michigan counterpart.  Title VII forbids an employer from "discharg[ing] any individual, or otherwise . . . discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  The Michigan Elliott-Larsen Civil Rights Act forbids like conduct.  Claims of race discrimination under Title VII and the Michigan counterpart can be analyzed together because Michigan courts frequently "turn to federal precedent for guidance in reaching [their] decision" to determine whether a claim has been established in discrimination cases.  *Radtke v. Everett,* 442 Mich. 368, 382, 501 N.W.2d 155, 162 (1993) (quoting *Sumner v. Goodyear Co.,* 427 Mich. 505, 525, 398 N.W.2d 368 (1986)).  For analytical purposes, Michigan's Elliott-Larsen Act resembles federal law, and the same evidentiary burdens prevail as in Title VII cases.  *See In re Rodriguez,* 487 F.3d 1001, 1008 n. 2 (6th Cir. 2007); *Humenny v. Genex Corp.,* 390 F.3d 901, 906 (6th Cir. 2004); *Lytle v. Malady,* 458 Mich. 153, 172-73, 579 N.W.2d 906, 914 (1998).

A.  Discrimination Claim

To withstand summary judgment on a race discrimination claim, the plaintiff must either "present direct evidence of discrimination or introduce circumstantial evidence that would allow an inference of discriminatory treatment." *Johnson v. Kroger Co.,* 319 F.3d 858, 864-65 (6th Cir. 2003). In the absence of direct evidence, the plaintiff might prevail if she can establish an inferential case of discrimination under the familiar *McDonnell Douglas* framework.

As noted above, the magistrate judge found that the plaintiff has not offered direct evidence of discrimination. The plaintiff did not object to that part of the report. To establish an inferential case of disparate treatment based on race, the plaintiff may proceed under the "the burden-shifting framework first set forth in *McDonnell Douglas v. Green,* 411 U.S. 792, 802-05 (1973)." *Blair v. Henry Filters, Inc.,* 505 F.3d 517, 524 (6th Cir. 2007) (citing *Rowan v. Lockheed Martin Energy Sys., Inc.*, 360 F.3d 544, 547 (6th Cir. 2004); *Town v. Mich. Bell Tel. Co.,* 455 Mich. 688, 695, 568 N.W.2d 64, 67-68 (1997), *abrogated on other grounds by Gross v. FBL Financial Svcs., Inc.*, --- U.S. ---, 129 S. Ct. 2343 (2009). That construct addresses proof of discriminatory intent by circumstantial evidence, and it requires the plaintiff to present a *prima facie* case, whereupon the defendant must offer a legitimate reason for its actions. If the defendant does so, the plaintiff cannot proceed unless she offers some evidence that the defendant's proffered justification is a pretext for unlawful discrimination. *See Kline v. Tennessee Valley Auth.,* 128 F.3d 337, 342 (6th Cir. 1997).

A plaintiff may establish a *prima facie* case of discrimination "by showing that: '(1) she is a member of a protected group, (2) she was subject to an adverse employment decision, (3) she was qualified for the position, and (4) she was . . . treated differently than similarly situated non-protected employees.'" *Russell v. Univ. of Toledo,* 537 F.3d 596, 604 (6th Cir. 2008) (internal citations omitted).

-10-

The fourth element of the plaintiff's *prima facie* case is the only one in dispute in this case. "To satisfy the similarly-situated requirement, a plaintiff must demonstrate that the comparable employee is similar 'in all of the *relevant* aspects.'" *Martin v. Toledo Cardiology Consultants, Inc.,* 548 F.3d 405, 412 (6th Cir. 2008) (quoting *Ercegovich v. Goodyear Tire & Rubber Co.,* 154 F.3d 344, 352 (6th Cir. 1998) (emphasis in original)); *see also McMillan v. Castro,* 405 F.3d 405, 414 (6th Cir. 2005) ("The plaintiff need not demonstrate an exact correlation with the employee receiving more favorable treatment in order for the two to be considered 'similarly-situated.'" (citation omitted)). To be "similarly situated," employees generally must "have dealt with the same supervisor" and "have been subject to the same standards." *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 583 (6th Cir. 1992).

The defendants do not dispute that the plaintiff meets the first three requirements of a *prima facie* case for discrimination, but they do contend that there is no evidence that similarly-situated persons outside the protected class were treated more favorably than she.

The plaintiff presents two employees whom she believes were comparable and were treated differently. The first is Kelly Freed, whom the plaintiff asserts was not disciplined as harshly for her excessive talking. However, Freed does not qualify as a comparable employee because she was not similarly situated. To be "similarly situated," employees generally must "have dealt with the same supervisor" and "have been subject to the same standards." *Mitchell,* 964 F.2d at 583. Although both Freed and the plaintiff presumably were subject to the standards outlined in the employee handbook, Freed was supervised by Eric Sine, and the plaintiff was supervised by Linda Hayward.

-11-

Even if Freed qualified as a comparable employee, the plaintiff has not demonstrated that Freed was treated differently. Just like the plaintiff, Freed was disciplined twice for excessive chatting, and just like the plaintiff, Freed was terminated by the defendants. The plaintiff's argument that Freed chatted more than the plaintiff and therefore she was effectively disciplined less than the plaintiff finds no record support. The plaintiff points to Freed's evaluations for evidence that Freed talked more often, and indeed, these evaluations do mention that Freed chatted too often. However, the subjective remarks by different supervisors do not establish comparable conduct. The plaintiff has not demonstrated that Freed was a comparable employee who was treated differently.

The second potentially comparable employee presented by the plaintiff is Rosemarie Stinebiser. The magistrate judge concluded that Stinebiser's errors were not similar to the plaintiff, and therefore the plaintiff has not demonstrated that Stinebiser and the plaintiff were comparable employees who were treated differently. After reviewing the record, the Court must agree. Viewing the evidence in the light most favorable to the plaintiff, the error of misfiling papers must be considered to be significantly less serious than misapplying tax payments and incorrectly transferring funds. The former is an inconvenience for other employees. The latter are potentially serious mistakes that could have resulted in increased tax liability for the defendants or the mistaken billing of a customer. That observation leads inevitably to the conclusion that Stinebiser was treated more leniently for less serious transgressions.

### B. Retaliation

Title VII and ELCRA also prohibit retaliation against an employee for complaining about discrimination. *See* 42 U.S.C. § 2000e-3(a) ("It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice

-12-

made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."); Mich. Comp. Laws § 37.2701(a) (making it unlawful to "[r]etaliate or discriminate against a person because the person has opposed a violation of this act, or because the person has made a charge, filed a complaint, testified, assisted, or participated in an investigation, proceeding, or hearing under this act"). "In order to establish a *prima facie* case of retaliation, a plaintiff must establish that: (1) he engaged in activity protected by Title VII; (2) the exercise of his civil rights was known to the defendant; (3) thereafter, the defendant took an employment action adverse to the plaintiff; and (4) there was a causal connection between the protected activity and the adverse employment action." *Nguyen v. City of Cleveland,* 229 F.3d 559, 563 (6th Cir. 2000).

The plaintiff must offer some evidence of a causal connection between the complaints and the adverse action, which sometimes may consist of temporal proximity. As the Sixth Circuit has explained:

> Where an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a *prima facie* case of retaliation. But where some time elapses between when the employer learns of a protected activity and the subsequent adverse employment action, the employee must couple temporal proximity with other evidence of retaliatory conduct to establish causality. *See [Little v. BP Exploration & Oil Co.,* 265 F.3d 357, 365 (6th Cir. 2001)] ("[T]emporal proximity, when considered with the other evidence of retaliatory conduct, is sufficient to create a genuine issue of material fact as to" a causal connection.).

*Mickey v. Zeidler Tool & Die Co.,* 516 F.3d 516, 525 (6th Cir. 2008). "To establish the causal connection required in the fourth prong, a plaintiff must produce sufficient evidence from which an inference could be drawn that the adverse action would not have been taken had the plaintiff not filed a discrimination action." *Nguyen*, 229 F.3d at 563 (internal citations omitted).

-13-

If the plaintiff establishes a *prima facie* case, then the defendant must offer a legitimate business justification for its actions, which the plaintiff may rebut with evidence of pretext. *Michael v. Caterpillar Fin. Servs. Corp.,* 496 F.3d 584, 597 (6th Cir. 2007). The plaintiff may show pretext in the same manner as in a disparate treatment theory of discrimination. *Imwalle v. Reliance Med. Prods., Inc.,* 515 F.3d 531, 545 (6th Cir. 2008). In this circuit, proof of pretext has been organized around three general propositions: "(1) that the proffered reasons had no basis *in fact,* (2) that the proffered reasons did not *actually* motivate [the employee's] discharge, or (3) that they were *insufficient* to motivate discharge." *Manzer v. Diamond Shamrock Chems. Co.,* 29 F.3d 1078, 1084 (6th Cir.1994), *abrogated on other grounds by Gross*, 129 S. Ct. 2343 (2009) (quoting *McNabola v. Chicago Transit Auth.,* 10 F.3d 501, 513 (7th Cir. 1993)). In order to determine whether the plaintiff has raised a genuine issue of material fact as to pretext, the Court must consider not whether the defendants' reasons for taking an adverse action against the plaintiff were actually good reasons, but instead whether the defendants had an honestly held belief that they were. *See Alan v. Highlands Hosp. Corp.*, 545 F.3d 387, 398 (6th Cir. 2008).

> [T]he key inquiry in assessing whether an employer holds such an honest belief is whether the employer made a reasonably informed and considered decision before taking the complained-of action. An employer has an honest belief in its rationale when it reasonably relied on the particularized facts that were before it at the time the decision was made. [W]e do not require that the decisional process used by the employer be optimal or that it left no stone unturned.

*Ibid.* (quoting *Michael v. Caterpillar Fin. Servs. Corp.,* 496 F.3d 584, 598-99 (6th Cir. 2007)). "The 'plaintiff must produce sufficient evidence from which the jury could reasonably reject [the defendants'] explanation and infer that the defendants . . . did not honestly believe in the proffered nondiscriminatory reason for its adverse employment action.'" *Mickey,* 516 F.3d at 526 (quoting *Braithwaite v. Timken Co.,* 258 F.3d 488, 493-94 (6th Cir. 2001)).

-14-

The magistrate judge suggested that the plaintiff failed to demonstrate a causal connection between her protected activity and her termination, but the Court believes that some record evidence may have been overlooked. The magistrate judge mentioned only the reassignment of the plaintiff's mail duties and the "cold" atmosphere in the office, and determined that these facts, without more, were insufficient to support a finding of a causal connection between the plaintiff's EEOC complaint and her termination six months later. However, the defendants acknowledged that they learned of the EEOC complaint "[b]efore Metro had an opportunity to discuss the Internal Complaint with [the] plaintiff." Defs.' Br. in Support of Mot. for Summ. J. at 3. Presumably, then, the defendant company received notice of the EEOC complaint before its own investigation began on April 22, 2009.

On April 30, 2009, two significant events took place. First, the internal investigation was terminated. The defendants allege that was due to the plaintiff's failure to cooperate with the investigations by failing to sign the confidentiality agreement and stopping discussion of the issues with the defendants because she felt that the investigator, Hess Law Group (defendants' counsel in the present action), was not a neutral party. The plaintiff stated in her deposition that she was threatened with termination if she did not sign the confidentiality agreement. Second, the plaintiff was disciplined for billing a customer incorrectly and for improperly issuing tax credits for the Atlanta office. The defendants admit that processing tax credits for the Atlanta office was not part of the plaintiff's normal job duties, but allege that the only way that the plaintiff could have entered the credits incorrectly would be to ignore pop-ups in the computer system. The plaintiff disagreed with that disciplinary action, stating that she had never processed tax credits in Atlanta and she was

not told that they should be processed differently than in Detroit.  At her deposition, the plaintiff

testified that she was told that those tax credits should be processed the same as they were in Detroit.

The April 30, 2009 disciplinary event can be viewed as constituting retaliatory conduct that

would support a finding of causation.  Viewing those events in the light most favorable to the

plaintiff, as the Court is required to do here, a jury could find that the disciplinary event was in

retaliation for filing the EEOC complaint, since it occurred only ten days after the plaintiff filed her

complaint and after the defendants were made aware of it.  And because there is evidence in the

record to suggest that the plaintiff was directed to process the tax credits the way she did, a

reasonable jury could conclude that shortly after she filed a complaint, the plaintiff was reprimanded

for completing a task in the way she had been told to by her supervisor.  Combined with the

reassignment of her mail duties, the evidence demonstrates a genuine issue of material fact as to the

plaintiff's *prima facie* case of retaliation under Title VII.  *See, e.g., Hamilton v. General Elec. Co.,*

556 F.3d 428, 435-36 (6th Cir. 2009) (finding that an assertion by the plaintiff that the employer

increased its scrutiny of him after filing an EEOC complaint provided sufficient evidence of a causal

connection between the complaint and the plaintiff's dismissal three months later to support a *prima*

*facie* case of retaliation).  In addition, this evidence creates a genuine issue of material fact as to the

plaintiff's *prima facie* retaliation claim under the ELCRA.  The ELCRA requires the plaintiff to

show "something more than a temporal connection between protected conduct and an adverse

employment action."  *West v. General Motors Corp.*, 469 Mich. 177, 186, 665 N.W.2d 468, 473

(2003).  The evidence cited above satisfies that standard.

The defendants have offered a legitimate business reason for terminating the plaintiff.  The

defendants point to the plaintiff's disciplinary record and argue that each of the violations is, on its

own, a sufficient legitimate non-retaliatory reason for terminating the plaintiff's employment.  The defendants additionally assert that 2009 was a difficult year for Metro Wire, and sales had slipped from $14 million in 2007 to $5.1 million in 2009.  The defendants state that they needed to take cost-cutting action, and determined that the plaintiff's responsibilities could be given to other employees, although they also admit that the plaintiff's "dishonest and insubordinate acts of the past made the decision to separate her from employment more palatable."  Defs.' Br. in Support of Mot. for Summ. J. at 13.

Turning to the question of pretext, the plaintiff offers three arguments in her response to the defendants' motion for summary judgment for her belief that the economic reason for her termination given by the defendants is pretextual.  First, the defendants have given changing rationales for her termination.  Second, the defendants have a pattern of using the economy as a pretext for terminating employees they do not like.  Third, the process used by defendant Ezop to select the plaintiff for termination demonstrates that the economic reason for the termination decision was pretextual because he never assessed the cost of the plaintiff's employment before firing her.  All of these arguments fall within the category of pretext suggesting that "that the proffered reasons [for termination] had no basis *in fact*."  *Manzer,* 29 F.3d at 1084.

On the first point, the plaintiff criticizes the defendants' assertions that they terminated the plaintiff for a mixture of performance and economic reasons.  She points to defendant Ezop's deposition testimony that the plaintiff's performance was *not* a reason for her termination, suggesting that the defendants abandoned the performance argument.  The plaintiff notes that she was not written up for poor performance between the April 30, 2009 termination of the internal investigation and the October 2009 firing.  Finally, the plaintiff points to Devon Ezop's testimony

-17-

that the plaintiff's termination was a lay-off and the plaintiff might be able to return to work if the economy improves.

Although the plaintiff is correct that an employer's changing rationales can provide evidence of pretext, *see Thurman v. Yellow Freight Sys., Inc.*, 90 F.3d 1160, 1167 (6th Cir. 1996), the plaintiff's argument here falls short. A comparison to other cases finding pretext illustrates the point. For instance, in *Clay v. United Parcel Service, Inc.*, 501 F.3d 695 (6th Cir. 2007), the defendant did not assert its legitimate reason for termination until filing its reply brief in support of its motion for summary judgment. In contrast, here the defendants have asserted since the date of the plaintiff's termination that the plaintiff was let go for economic reasons. In *Asmo v. Keane, Inc.*, 471 F.3d 588 (6th Cir. 2006), the defendant originally stated that the reason for terminating the plaintiff was that the plaintiff's salary and expenses were higher than that of other employees, but dropped these reasons when they were proven to be untrue. In contrast, the plaintiff here has never disputed that the defendants were seriously affected by the downturn in the economy in 2008. In *Cicero v. Borg-Warner Automotive, Inc.*, 280 F.3d 579 (6th Cir. 2002), the defendant gave a different reason at the time of termination than during deposition, and then gave third reason during summary judgment proceedings. In contrast, here the plaintiff's termination notice stated that she was terminated for economic reasons, defendant Ezop testified during his deposition that the plaintiff was terminated for economic reasons, and the defendants argued in their summary judgment motion that the plaintiff was terminated for economic reasons along with performance issues. This case is a poor example of shifting rationales as evidence of pretext. Because the defendants have consistently maintained that economic reasons provided the primary impetus for the plaintiff's termination, albeit with the plaintiff's performance issues as a contributing factor for choosing her

over another employee, no fact question emerges that suggests the defendants' reason for terminating the plaintiff was pretextual.

In her second argument in support of pretext, the plaintiff identifies four white employees who were terminated between 2008 and 2010 and argues that the defendants used economic reasons as a pretext to terminate them. The plaintiff asserts that defendant Donald Ezop stated at deposition that Kelly Freed was laid off for economic reasons, but Cheryl Ezop stated that Freed was laid off because she talked too much and made disparaging remarks about the company on Facebook. The plaintiff also points to Ken Yolonek, whose termination notice states "message not getting through to the Sales Department." The plaintiff observes that defendant Donald Ezop testified that the termination was purely for economic reasons, while Cheryl Ezop stated in her deposition that Yolonek was not performing well as a sales manager. The plaintiff's third example is Dan Brown, whose separation form states that the reason for termination was "lack of work, economic conditions." However, Cheryl Ezop testified that Brown was terminated both for economic reasons and for having difficulty with authority. A final example is Donna Jacquin. The plaintiff alleges that Jacquin was terminated for economic reasons, but argues that the fact that another employee was hired in the same department a year later demonstrates pretext and that Jacquin was terminated because she "was not cutting it."

In their reply, the defendants state that in order to rule for the plaintiff, the Court must find "racial animus in the retaliation" and thus that the plaintiff's use of white employees as examples is self-defeating. Defs.' Reply at 9. The defendants' argument misses the point. In order to prove that the reason for her termination was pretextual for the purposes of a retaliation claim, the plaintiff need not prove that the actual reason for her termination was race. She need only prove that the

-19-

actual reason for her termination was that she had engaged in a protected activity.  Therefore, evidence showing that white employees had also been terminated for pretextual reasons does not undermine the plaintiff's argument.  *See Mickey*, 516 F.3d at 526.   The evidence is counterproductive in another way, however, because it tends to demonstrate that the defendants' stated reasons for terminating the plaintiff were its actual reasons.   The fact that four other employees were terminated between 2008 and 2010 for mixed economic and performance reasons tends to show that the plaintiff herself was terminated for a mixture of economic and performance reasons.   The plaintiff characterizes the group of terminated workers as problem employees.   True enough, but by the plaintiff's own account, the problem that the defendants had with these people was that they had performance issues: Freed "talked too much," Brown made mistakes at work and had a poor attitude, Yolonek gave a dissatisfactory performance as sales manager, and Jacquin "was new with the company and was not cutting it."   The fact that all of the terminated employees had performance problems makes it more likely that the defendants actually were attempting to terminate employees with performance problems.   The plaintiff asks the Court to infer that the defendant's multi-based termination rationale is a cover-up for an illegal motive.   But accepting as true the plaintiff's argument that the defendants' stated economic reasons for terminating these employees was not genuine, the actual reasons for terminating these employees are, by the plaintiff's own account, legitimate performance-related reasons.   The Court does not see how that conduct would support an inference that the defendant's economic justification was a pretext for an unlawful, retaliatory motive.   The most that can be said of that evidence is that the defendants used the economic reason as a pretext, and its actual motive for terminating the plaintiff was her performance deficites.

-20-

In support of her third point, the plaintiff argues that the process used by defendant Ezop to select the plaintiff for termination demonstrates that the economic justification was pretextual. She cites defendant Ezop's deposition testimony that he did not recall looking at any document showing the plaintiff's salary or whether the plaintiff was receiving medical benefits while making the termination decision. The defendants do not address this argument in their reply brief. However, the plaintiff's argument is unconvincing. It is true that "for an employer to avoid a finding that its claimed nondiscriminatory reason was pretextual, the employer must be able to establish its reasonable reliance on the particularized facts that were before it at the time the decision was made." *Escher v. BWXT Y-12, LLC*, 627 F.3d 1020, 1030 (6th Cir. 2010) (internal citations omitted). However, "[t]he investigation process does not need to be perfect, but the employer must make a reasonably informed and considered decision before taking an adverse employment action." *Ibid.* (internal citations and quotation marks omitted).

The evidence viewed in the light most favorable to the plaintiff demonstrates that the defendants actually did make a reasonably informed and considered decision. Donald Ezop testified in his affidavit that the company's sales numbers declined precipitously in 2008; at deposition he testified that when deciding to terminate the plaintiff, he determined that her duties could be split up among three or four people. Devon Ezop, the Human Resources Manager, testified that Donald told him that the company "couldn't afford to keep [the plaintiff] aboard and that . . . it would be easier to distribute her duties among current employees." Pl.'s Resp. to Def.'s Mot. for Summ. J. Ex. 5 Devon Ezop Dep. at 86. The fact that Donald Ezop did not review the plaintiff's salary and benefits documentation before deciding to terminate her does not establish a lack of reliance on the

-21-

pertinent economic information.  No legitimate inference of pretext could be drawn from Donald Ezop's conduct related to his decision to terminate the plaintiff.

Because the plaintiff has not offered evidence creating a fact issue on the question of pretext, summary judgment on the retaliation claim must be granted.

### C.  Donald Ezop's Individual Liability

The magistrate judge recommended that all claims against Donald Ezop be dismissed.  The plaintiff has not objected to that part of the report and recommendation and the time for doing so has passed.  A party's failure to file objections to the report and recommendation waives any further right to appeal.  *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Likewise, the failure to object to an unfavorable portion of the magistrate judge's report releases the Court from its duty to independently review the issue.  *Thomas v. Arn*, 474 U.S. 140, 152 (1985).

### III.

Although the Court finds that part of the magistrate judge's report cannot be accepted, the Court does agree with the recommendation for the reasons stated herein.  The Court finds that the plaintiff has not raised a material fact question on all the essential elements of her claims and the defendants are entitled to judgment in their favor as a matter of law.

Accordingly, it is **ORDERED** that the magistrate judge's report and recommendation [dkt #39] is **ADOPTED IN PART**.

It is further **ORDERED** that the plantiff's objections to the magistrate judge's report and recommendation [dkt #40] are **OVERRULED**.

-22-

It is further **ORDERED** that the defendants' motion for summary judgment  [dkt #18] is

**GRANTED**.

It is further **ORDERED** that the complaint is **DISMISSED WITH PREJUDICE**.


                                       s/David M. Lawson
                                       DAVID M. LAWSON
                                       United States District Judge

Dated:   September 28, 2011

<div style="border:1px solid">

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served
upon each attorney or party of record herein by electronic means or first
class U.S. mail on September 28, 2011.

                          s/Deborah R. Tofil
                          DEBORAH R. TOFIL

</div>